BOEHMER v. PENNSYLVANIA R. CO.

(Circuit Court of Appeals, Second Circuit. May 10, 1918.)

No. 113.

1. MASTER AND SERVANT ⚖111(1)—SAFETY APPLIANCE ACT—GRABIRONS.

Safety Appliance Act March 2, 1893, § 4 (Comp. St. 1916, § 8608), requiring railroads to provide cars used in interstate commerce with secure grabirons on the ends and sides of each car, was not violated by using a car having a grabiron at each side at one corner for use while operating the pin lever, and grabirons on each end of the car opposite to the pin lever.

2. MASTER AND SERVANT ⚖155(3)—SAFETY APPLIANCE ACT—NEGLIGENCE—WARNING.

A railroad's failure to warn either an experienced brakeman or a green hand that some cars of an older style had grabirons on only two corners, while others were equipped on all four corners, was not negligence, as such warning would have added nothing to their observation, and as it might assume either that they would not act without looking or had already learned that they could not rely upon a safe support.

3. MASTER AND SERVANT ⚖235(1)—SAFETY APPLIANCES—CONTRIBUTORY NEGLIGENCE—DEFENSE.

A student brakeman, attempting to board a car to reach the brakes, and who at one corner of the car put his hands and feet where he supposed there was a grabiron and sill, but where the car had grabirons on only two corners, was guilty of contributory negligence, which, the case in that aspect being at common law, was a defense to his action for injury.

In Error to the District Court of the United States for the Western District of New York.

Action by Michael U. Boehmer against the Pennsylvania Railroad Company. From a judgment dismissing the complaint, plaintiff brings error. Affirmed.

Writ of error to a judgment of the District Court for the Western District of New York (Thomas, J., presiding), dismissing a complaint after trial for failure of proof. The jurisdiction of the District Court depended upon diverse citizenship and on the Safety Appliance Act (Act March 2, 1893, c. 196, 27 Stat. 531 [Comp. St. 1916, §§ 8605-8612]). The action was for injuries caused to the plaintiff by one of the defendant's cars while he was in the defendant's employ, through the supposed negligence of the defendant. The specific failures charged were the improper equipment of the car with grabirons and sills in accordance with the statute, and in failing to instruct the plaintiff that the defendant would operate such cars along with those properly equipped. The facts disclosed upon the trial were that the plaintiff engaged with the defendant as a brakeman in September, 1915, had taken a student trip, so called, over the entire system, and at the time of the accident, in the night of November 8, 1915, was employed in switching freight cars at Brockton, N. Y. A refrigerator car, not the property of the defendant, stood upon the Nickel Plate tracks, and was to be transferred into a freight train being made up by one of the defendant's engines and crew, to which the plaintiff was detailed. It became necessary to take this car out of the train where it stood and drill it into the proposed train. At some stage of this maneuver the car was shunted along the track, and the plaintiff tried to board it, so as to get to the top and put on the brakes. He chose one corner of the car at which there was no grabiron and no sill, putting his hands where he supposed the grabiron would be and his

⚖For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

foot where he supposed the sill would be. He fell under the car, and his foot was crushed and had to be amputated. It was dark at the time, and he carried a lantern. The car in question had a grabiron on each side of the car at one corner, where the pin lever for coupling and uncoupling extends along the end nearly to the corner. It had other grabirons on each end of the car at the side opposite to the pin lever, and had two ladders, one on each end of the car at the same side as the pin lever.

Two charges are made: First, that the car was not properly equipped under the Safety Appliance Act; and, second, that the defendant ought to have warned the plaintiff that some of the cars which it handled were not equipped according to the more modern requirements which provided that there should be two grabirons on each side of the car, with sills beneath them.

Sullivan, Bagley & Wechter, of Buffalo, N. Y. (Thomas A. Sullivan, of Buffalo, N. Y., of counsel), for plaintiff in error.

Rumsey & Adams, of Buffalo, N. Y. (H. J. Adams, of Buffalo, N. Y., of counsel), for defendant in error.

Before ROGERS and HOUGH, Circuit Judges, and LEARNED HAND, District Judge.

LEARNED HAND, District Judge (after stating the facts as above). [1] The only statutory requirement applicable to this car at the time in question was that of section 4 of the act of March 2, 1893 (Comp. St. 1916, § 8608), which provides as follows:

"Until otherwise ordered by the Interstate Commerce Commission, it shall be unlawful for any railroad company to use any car in interstate commerce that is not provided with secure grabirons or handholds in the ends and sides of each car for greater security to men in coupling and uncoupling cars."

The first question is whether this provision was not fulfilled. At each end of the car there was a pin lever operating the automatic coupler. This pin lever came out nearly to the corner. At each side, near to these corners, was a grabiron and a sill, so situated that a man could use them while operating the pin lever. There were also grabirons on each end of the car opposite to where the pin levers were. It appears to us that the language of the section was complied with. It is clear that the number of grabirons was not specified and it is only by the act of April 14, 1910 (36 Stat. 298, c. 160) as amended by that of March 4, 1911 (Act March 4, 1911, c. 285, 36 Stat. 1397), that the number of grabirons could be prescribed by the Interstate Commerce Commission. Since that time the Interstate Commerce Commission has provided that there shall be grabirons on both ends of each side of the car, with sills under them, and ladders on each side of each end of the car. This, however, is a new provision, and not in effect on November 8, 1915.

Section 4 of the act of 1893 was designed to promote the safety of the "men in coupling and uncoupling cars," and the grabirons on the side were probably included to give some hold while the men operated the pin levers. We do not see, however, how a grabiron on the side of the car away from that towards which the pin lever extended could by any construction be of assistance in coupling and uncoupling. If a man was coupling or uncoupling on the side opposite to that at which the pin lever came out, he could do nothing

without going between the cars, as there was no other way in which he could reach the coupling devices. While in there he was entitled to the protection of a grabiron at the end of the car, which he had in this case; but a grabiron at the side of the car at that point would have been absolutely no protection to him, as he could not possibly have reached it in case of emergency. So it seems to us that the only grabirons on the side of the car contemplated by the act of 1893 were the two actually in place on the car in question. The later provision for four grabirons on the sides of the car goes along with the requirement for two ladders on each end of the car, so that a man may swing to the sill and mount the ladder; but it could not be a protection in coupling and uncoupling cars. We therefore conclude that the act of 1893 was not violated by the car in question.

[2, 3] The remaining question is whether the defendant owed the plaintiff a duty to inform him that some of the cars had grabirons on only two corners while others had not. The proportion between those cars equipped on all four corners and those equipped on two does not appear. We have only the statement of the engineer that he saw several such cars every day, which we accept as equivalent to saying that any man in the service of the company would encounter them daily several times. Therefore, as to men whom custom had familiarized with the existing conditions, it can hardly be said that instructions would have added anything to the facts patently and repeatedly before them. If that very custom betrayed them in a given instance, it was for lack of an equipment which should respond to the inevitable inattention that long custom breeds, and such equipment happily now exists. Instructions would not help in such a situation, and we cannot charge the defendant with what would have been an idle thing.

As to green men the case is different. I have some doubt whether we should assume that they would necessarily observe such relatively exceptional equipment. While it was a most unexpected thing to happen, it seems to me doubtful whether it passes so far beyond possibilities reasonably to be anticipated as to justify its exclusion from that latitude which a jury should be allowed in fixing fault. The parties did not stand upon an equality in knowledge, and there seems to me a question whether the defendant might assume that the exceptional equipment had in less than two months come to the plaintiff's attention, or that he would not be misled by the much greater proportion of modern cars. However, my colleagues believe that, as the old style was equally open to his observation, the defendant had the right to assume either that he would not act without looking, or, if he had got so far as to establish instinctive habits, he would have already learned that he could not rely upon a safe support. In any case, they think, he cannot be excused from contributory negligence, which, the case in this aspect being at common law, is a defense.

None of the authorities that are mentioned by either party seem to us to have any place in the discussion. Of course, we do not assume that the act of 1893 was abrogated by the act of April 14, 1910, or of March 4, 1911. Illinois Central Ry. Co. v. Williams, 242 U. S.

462, 37 Sup. Ct. 128, 61 L. Ed. 437, United States v. Norfolk & Western (D. C.) 184 Fed. 99, and United States v. B. & O. Ry. (D. C.) 184 Fed. 94, do not decide that handholds and grabirons are necessary on both ends of each side of the cars, as the plaintiff contends. Judgment affirmed, with costs.

---

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied July 3, 1918.