# RALPH W. MOORE v. ST. JOSEPH & GRAND ISLAND RAILWAY COMPANY, Appellant.

**Division One, June 2, 1916.**

1. **FEDERAL EMPLOYERS' LIABILITY ACT: Jurisdiction.** An action for damages for personal injuries bottomed on the Federal Employers' Liability Act cannot be removed to the Federal court on the ground of diverse citizenship.

2. **VERDICT CONTRARY TO WEIGHT OF EVIDENCE: Reversal on Appeal.** On appeal a verdict will not be set aside on the ground that it is contrary to the greater weight of the evidence, if there is substantial evidence supporting it. It is for the jury to settle a conflict in the evidence.

3. **FEDERAL EMPLOYERS' LIABILITY ACT: Contributory Negligence.** Contributory negligence constitutes neither defense nor mitigation to a suit founded on the Federal Employers' Liability Act.

4. **EVIDENCE: Photographs: Illustrating Testimony.** A photograph of a tender of the class to which the tender by which plaintiff was injured belonged, may be introduced in evidence in explanation of the testimony of a witness who testifies as to the location of the handhold or grab-iron which is complained of as being a defective and unsafe appliance, and cannot be excluded on the ground that it is not admissible for other purposes.

5. **RESTRICTING EVIDENCE TO PROPER PURPOSE.** If it is desired to restrict evidence proper for some purposes to the purposes for which only it is admissible, that can be done by instructions.

6. **SAFETY APPLIANCE ACT: Defective Coupler: No Negligence in Backing Train.** Under the Safety Appliance Act and the Federal Employers' Liability Act, an employee of an interstate railroad, injured while engaged in coupling a tender and car, is entitled to recover damages if the tender was not equipped with grab-irons and an operative automatic coupler and the absence of either contributed to his injury, without regard to contributory negligence; and an instruction so predicating his right to recover is not erroneous because it does not also require the jury to find to be true the allegation that the engine was negligently backed against him while he was attempting to make the coupling.

Moore v. Railroad.

7. INSTRUCTION: Assuming Controverted Fact. An instruction which assumes as true a material fact in controversy is erroneous; but the instruction for plaintiff set out in the opinion did not make such an assumption.

8. CONTRADICTING WITNESS: Reading From Deposition. It is not prejudicial error to read to the jury from the prior deposition of a witness certain questions and answers thought to be in conflict with his testimony in court, where (1) there is no fact of the slightest consequence embraced by the one that is not found in the other, or (2) the testimony of the witness on the stand was in entire harmony with that read from the depositions.

9. ————: ————: Traveling Outside Record. In such case the rule which prohibits counsel to go outside of the record and present to the jury extraneous matter of a prejudicial character, has no application.

10. VERDICT ON ONE COURT: Silence as to Others. The rule that when a jury returns a verdict for plaintiff on one count of a petition that is equivalent to finding against him on the other counts concurrently submitted, does not prohibit the jury from rendering a valid verdict by finding for plaintiff on the first count and making no finding as to the second. Although the facts alleged in both counts are much the same, such a verdict is not a finding against the truth of those stated in the second, nor is such a verdict, because of that rule, inconsistent.

11. SAFETY APPLIANCE ACT: Grab-Irons and Handholds: Substitutes. The Safety Appliance Act declared that "it shall be unlawful for any railroad company to use any car in interstate commerce that is not provided with secure grab-irons or handholds in the ends and sides of each car for greater security to men in coupling and uncoupling cars." That language as applied to an injury to an employee in 1910 was an absolute command, and did not authorize the placing on cars or tenders of substitutes for grab-irons or handholds, nor did such substitutes excuse their omission.

12. ————: ————: ————: Reasonable Security. And an instruction which excuses the railroad company if it supplied the car with other attachments or devices in place of grab-irons or handholds, which "furnished reasonable security to employees in coupling cars," is a concession to the company to which it is not entitled. Nevertheless, it cannot be said to have misled the jury to the company's prejudice.

13. ————: ————: Car Includes Tender. The word "car" used in the quoted language from said Safety Appliance Act includes "tender."

14. **EXCESSIVE VERDICT: $25,000.** Prior to his injuries, at the age of twenty-two years, plaintiff, a railroad employee, had been in excellent health and earning $75 to $100 per month. As a result of his injuries, he has lost both hands, and one leg was broken and so injured that it is two and one-half inches shorter than the other. He is unable to feed himself, walks but little, and that little is painful and difficult, and he still suffers, and there is nothing he can do to earn anything. *Held* that a verdict for $25,000 was not excessive.

Appeal from Buchanan Circuit Court.—*Hon. William D. Rusk,* Judge.

AFFIRMED.

*Robert A. Brown* for appellant.

*Mytton & Parkinson* for respondent.

BLAIR, J.—Moore, the respondent, instituted this action in the Buchanan Circuit Court under the Federal Employers' Liability Act (35 U. S. Stat. at Large, chap. 149, p. 65; Fish v. Railroad, 263 Mo. l. c. 115, 116) for damages for personal injuries, and recovered judgment for $25,000 under a count of the petition alleging, among other things, that respondent's injuries were due to appellant's violation of those provisions of the Safety Appliance Act requiring the attachment of grab-irons or handholds and the maintenance of automatic couplers in operative condition upon the rear of engine tenders, and to the fact that an engine and tender operated in a condition violative of the provision mentioned was negligently backed against and over him.

The facts bringing the case within the purview of the Federal act are undisputed. Respondent offered testimony tending to prove the allegations of the petition, and the evidence by defendant tended to disprove those allegations and to prove contributory negligence, which appellant pleaded. Numerous

268 Mo.—3

assignments are relied upon for reversal. Further facts are stated in the course of the opinion.

I. The ruling denying the petition for removal to the Federal court on the ground of diversity of citizenship was correct. [K. C. So. Ry. v. Leslie, 238 U. S. 1. c. 602, 603; Fish v. Railroad, supra, l. c. 116.]

**Jurisdiction.**

II. It is insisted the judgment cannot stand because, it is argued, the verdict is against the great weight of all the credible evidence in the case. The general rule on appeals in actions at law is that if there is substantial evidence tending to support the verdict, the jury's view of the weight of the evidence is accepted by this court. A careful examination of the entire record satisfies us this assignment is an effort to overthrow a verdict on the ground it is against the weight of the evidence. Respondent's evidence clearly tended to prove the negligence alleged. It is not contended it did not do so except on the theory that it was so contradicted by appellant's evidence that its probative force was destroyed. In fact, however, some of the witnesses whose testimony is relied on as destroying respondent's evidence contradicted themselves. Some were contradicted by others of appellant's witnesses, and some contradicted physical facts tending to make out respondent's case and shown beyond dispute by photographs offered by appellant. In these circumstances the usual rule applicable in cases tried on conflicting evidence unquestionably applies, and the point is ruled against appellant.

**Verdict Against Greater Weight of Evidence.**

The decisions cited to the contrary do not deal with cases such as this, wherein is presented but another example of conflicting evidence, with substantial evidence supporting the verdict. In those cases is found something inherently improbable in the evidence held insufficient.

III.   Appellant introduced in evidence a rule which, among other things, forbade employees "to go between cars in motion to uncouple them" or "to engage in other dangerous practices."

On the trial, appellant contended respondent, in violation of this rule, went behind the tender while it was in motion in response to his own signal and that his doing so was the proximate cause of his injury.   Respondent's counsel while cross-examining one of appellant's expert witnesses asked him whether it was not customary for employees to go between cars "to fix the knuckles" of couplers in case the pin-lifting rod would not work.   The witness answered in the affirmative, and the admission of this testimony is asserted to be erroneous, because it appeared the witness knew nothing of any violation of appellant's rule by its employees, but answered from a general knowledge of railroads, not including appellant's.

<span style="margin-left:2em"></span>*Evidence of Contributory Negligence.*

The context shows the witness had already testified that when a pin-lifting rod was so constructed that it could be readily grasped by employees, no additional security was afforded by placing upon tenders and cars appliances designed to serve only as grab-irons and without any other function.   It was while respondent's counsel were endeavoring to probe the grounds of this testimony that the question objected to was asked.   The context discloses its purpose was simply to show that despite the equipment of cars and tenders with automatic couplers, occasions arose when it was necessary to go between the cars and to use the hands "to fix the knuckle."   No mention of going between moving cars is made in the question or answer and, consequently, the force of appellant's rule could not be affected.   Further, respondent's violation, if any, of appellant's rule was at most but evidence of contributory negligence; and in this case, the action being founded upon violations of the

applicable Safety Appliance Act, contributory negligence constitutes neither defense nor mitigation. [Second Employers' Liability Cases, 223 U. S. l. c. 49, 50.] There was no error in this ruling.

IV. Over appellant's objection the trial court admitted in evidence respondent's "Exhibit G," a photograph of the rear of a tender attached to one of appellant's engines of the class to which belonged the engine and tender by which respondent was injured. Witnesses had testified that the grab-irons shown upon the buffer-beam or end sill of the tender in the photograph were of the character and in the position in which it was the custom of railroads to place grab-irons upon tenders at the time and prior to respondent's injury in June, 1910. The photograph was by these witnesses declared to depict a correct placing of the grab-irons according to the then prevalent custom. In admitting the photograph, the trial court specifically stated it was admitted "for the purpose of explaining the testimony of certain witnesses, who said that prior to June, 1910, and at that time, engines had grab-irons on them attached to the end sill, and that when they were so attached they were located as shown and marked in 'Exhibit G.' " In handing the exhibit to the jury, immediately thereafter counsel for respondent said: "Gentlemen, the court has admitted this photograph in evidence to illustrate and show to you gentlemen the location of handholds or grab-irons." On objection being made "to counsel making a statement to the jury," the trial court said to the jury: "Gentlemen, this picture is admitted in evidence, not to show or tend to show negligence on the part of defendant or that it was under a duty to locate grab-irons as indicated in the picture at the time this accident occurred, or to show whether that was so or not, but to explain to you the testimony

*Margin note: Explaining Testimony: Photograph.*

of certain witnesses, who referred to this picture and a lead pencil mark 'X' on one of the grab-irons, and testified as to the location of grab-irons on the end sill of tenders, when grab-irons were put on the end sill of tenders, to illustrate the location they said was customary when grab-irons were so located.''

The exhibit was clearly admissible for the purpose the court stated. Counsel does not contend to the contrary. Being admissible for one purpose, the fact it might not be admissible for others is not available as a means for its exclusion. In such circumstances instructions may be employed to limit the effect of the evidence offered. [Union Savings Assn. v. Edwards, 47 Mo. l. c. 449; Wilkins v. Railway, 101 Mo. l. c. 106.]

V. Appellant insists the first instruction given for plaintiff is erroneous. That instruction was designed to present the law upon the issues under the first count of the petition, which was grounded upon non-compliance with the Safety Appliance Act relating to grab-irons and couplers. The instruction reads:

Plaintiff's Instruction.

''The court instructs the jury that if you find from the evidence that on the 9th day of June, 1910, the defendant was a common carrier, engaged in interstate commerce by railroad, and while so engaged in interstate commerce it used on its line of railroad a locomotive engine and tender attached thereto, Number 45, in moving interstate traffic, and that said tender attached to said engine was equipped with a coupler designed to couple automatically by impact, and to be uncoupled without the necessity of men going between the end of said tender and cars, and that on the said 9th day of June, 1910, and prior thereto, said coupler would not work or accomplish the purpose for which it was designed, and would not couple automatically by impact, and could not be uncoupled

without the necessity of men going between the end of said tender and the end of cars, and you find from the evidence that said tender was not provided with secure grab-irons or handholds in the end of said tender for greater security to men in coupling and uncoupling said tender, and that the pin-lifting rod and the ladder and the perpendicular handhold on the rear corners of said tender and the steps or stirrups on said tender mentioned in evidence did not afford the same or equal security as grab-irons or handholds placed in the end of said tender for greater security to men in coupling and uncoupling said tender, and you further find from the evidence that on said date in the town of Marysville, Kansas, at the point mentioned in evidence, the plaintiff was in the employ of the defendant, and was in performance of his duties working in interstate commerce for defendant in coupling said tender to cars and was between the end of said tender and cars, and while in the exercise of ordinary care was, by reason of the fact that said coupler would not work or accomplish the purpose for which it was designed, and would not couple automatically by impact, and could not be uncoupled without the necessity of men going between the end of said tender and the end of cars (provided you so find) and because of the failure of the defendant company to provide said tender with secure grab-irons or handholds in the end of said tender for greater security to men in coupling and uncoupling said tender (provided you so find) and because of the fact that the pin-lifting rod and the ladder and the perpendicular handholds on the rear corners of said tender, and the steps or stirrups on said tender mentioned in evidence did not afford the same or equal security as grab-irons or handholds placed in the end of said tender for greater security to men in coupling and uncoupling said tender (provided you so find), run against, upon and over by said

tender and engine, and injured, then your verdict will be for the plaintiff on the first count of his petition.''

It is insisted that neither pleadings nor evidence warranted this instruction; that it assumes facts in controversy and is in conflict with instruction three given for appellant.

(1) The first count of the petition alleges, in substance, and the evidence tends to show, among other things, that appellant negligently and unlawfully ·had in use an engine with a tender upon the end of which there were no secure grab-irons for the greater security of employees in coupling and uncoupling cars and up$on which the automatic coupler was so out of repair that it could not be operated except by an employee going between the tender and cars; that respondent in the performance of his duties in coupling went behind the tender, and appellant's servants negligently backed the engine against, upon and over him, and that by reason of these negligent acts respondent was injured.

Appellant's chief contention in this connection is that since the instruction did not require the jury to find that the engine was negligently backed against respondent it ignores one allegation of negligence and is erroneous for that reason. It is not perceived in what manner appellant could have been injured by the elimination from the instruction of one of the grounds authorizing, if proved, a recovery. It is indisputable that plaintiff was entitled to recover if the tender was not equipped with grab-irons and an operative automatic coupler in the manner required by the Safety Appliance Act and if the absence of these or either of them contributed to his injury, and ,this without regard to any question of contributory negligence. [Grand Trunk Ry. Co. v. Lindsay, 233 U. S. 48, 49.] That he might also be entitled to rely upon negligence in backing the engine without signal could not defeat his right to rely upon

concurrent and negligent non-compliance with the Safety Appliance Act, such non-compliance accounting for his presence in the course of duty behind the tender and largely diminishing the probabilities of his saving himself from injury as the tender moved against him, if respondent's evidence is to be believed. The jury evidently believed it.

(2) It is also contended the instruction assumes that the pin-lifting rod or uncoupling rod upon the rear of the tender was not a grab-iron within the meaning of the act requiring grab-irons. There is no doubt that an instruction assuming as true a material fact in controversy is erroneous. It is manifest, however, from reading the instruction, that it contains no such assumption as charged, and neither analysis nor discussion is necessary to disclose the fact.

(3) An objection founded upon the asserted conflict between this instruction and instruction three given for appellant is based upon the contention that this instruction contains the erroneous assumption just adverted to. This objection falls with the previous one.

VI. One William Temps was a witness for appellant at the trial and had previously given his deposition. While on the stand he was cross-examined as to certain answers he made when his deposition was taken. The questions and answers read to the jury were not the identical ones concerning which he was cross-examined, and on this a claim of error is predicated.

Reading from Deposition.

The contention cannot be sustained because (1) there is not a fact of the slighest consequence mentioned in the questions and answers read which is not included in the questions and answers in the deposition which the cross-examiner called to the witness's attention and the witness admitted were asked and answered as shown by the deposition; and (2) the

testimony of the witness on the stand was in entire harmony with the questions and answers read. Appellant, in this connection, as appears from the cases cited in the brief, relies upon the rule that it is error to permit counsel to go outside the record and present to the jury extraneous matter of prejudicial character. The rule is inapplicable. As stated by appellant's counsel in his objection, the design of reading this matter from Temps's deposition was not to contradict him, since he had admitted testifying as disclosed by those parts of the deposition concerning which he was asked. The only rational purpose was to put before the jury exactly what Temps did say. The reading of these few questions concerning which Temps had not been specifically questioned was obviously due to respondent's counsel's honest but mistaken belief that Temps had been questioned concerning them. Had they differed in any material way from his testimony on the trial, another question would have been presented. They did not differ from it and no possible injury could have come to appellant from the mere fact that counsel read to the jury testimony which was in every possible material respect in the record before them out of the mouth of the witness counsel quoted.

VII. The rule is that when a jury returns a verdict upon one count of a petition this is equivalent to a finding against plaintiff on other counts concurrently submitted. From this rule appellant argues

Verdict.

the verdict is inconsistent in that the jury made no finding upon the second count, thereby impliedly finding against plaintiff on that count, and thereby finding against the truth of the facts in the second count, many of which were the same as those alleged in the count upon which the verdict was returned. It is argued that it results the two findings are in conflict and the verdict cannot stand.

No case is cited which supports this contention. The cases cited announce the stated rule as to findings implied from silence in the verdict upon a single count when the case is submitted under several counts differently stating the same cause of action. The proposition advanced refutes itself. Such a rule as that contended for is contrary to precedents and practice and would preclude the employment of more than one count for the purpose of stating a cause of action in different ways to meet the exigencies, of proof and would, in fact, for all practical purposes, partially repeal our statute which permits the joinder of causes of actions, and, as construed, permits one count to refer to another for facts common to both.

VIII.  Among the instructions requested by appellant was instruction three, referred to above. This instruction the court modified and gave over the exceptions of both parties. With the clause added by the court, placed in parentheses for purposes of identification, the instruction as given reads as follows:

**Defendant's Instruction.**

"The court instructs you that at the time plaintiff was injured, the law did not prescribe any fixed or definite character of handholds or grab-irons to be placed upon the rear ends of tenders, nor did it prescribe just where they should be attached. The defendant was only required to have upon the end of its tender secure handholds or grab-irons for the greater security of its employees in coupling and uncoupling cars. Any iron rod or iron device securely fastened upon the end of defendant's tender to which employees could conveniently catch hold while in the performance of their duties in coupling and uncoupling cars was a handhold or grab-iron within the meaning of the law, and if you believe from the evidence that there was upon each corner of defen-

dant's tender a vertical iron handhold or grab-iron securely fastened and so located as to be within easy reach of defendant's employees while standing near the corners of said tender in the performance of their duties in coupling and uncoupling cars, and that there extended across the rear end of the tender an iron rod just above the coupler, being so fastened and constructed as to permit defendant's employees, while in the performance of their duties, in coupling and uncoupling cars, to readily grab hold of the same for their better security while in the performance of such work (and that said attachments or devices furnished reasonable security to the employees of defendant in coupling and uncoupling said tender and cars), then the defendant was not guilty of negligence in failing to provide necessary and proper handholds or grab-irons for the use of plaintiff or other employees, and plaintiff cannot recover any sum on account of any injuries alleged to have been sustained by reason of the lack of proper and necessary handholds or grab-irons upon the rear end of defendant's tender.''

It is contended this instruction imposed upon appellant duties (1) so to equip its tender as to render the act of coupling and uncoupling reasonably safe under all circumstances, and (2) to use the safest known appliances rather than the type approved by common usage in the business.

The instruction was error in appellant's favor. The applicable Safety Appliance Act provides: ''It shall be unlawful for any railroad company to use any car in interstate commerce that is not provided with secure grab-irons or handholds in the ends and sides of each car for greater security to men in coupling and uncoupling cars.'' The term ''car'' includes ''tenders.'' The act contains an absolute command. It is not satisfied by the use of reasonable care to equip cars as it directs. The equipment

must be in place and in operative condition if the car is used in interstate commerce. [C. B. & Q. Ry. v. United States, 220 U. S. 574 et seq.] It does not authorize the placing upon cars and tenders of substitutes for grab-irons; nor does it provide that some other appliance, so constructed that it may be grasped, may serve instead of grab-irons and excuse their omission. The same act provided for automatic couplers which could be coupled and uncoupled "without the necessity of men going between the ends of the cars" and separately provided that "grab-irons or handholds" should be placed in the sides and ends of cars used in interstate commerce.

It is clear Congress intended to and did require *both* the automatic coupler, which included its uncoupling lever or pin-lifting rod, *and, in addition,* required grab-irons or handholds to be placed in the ends and sides of cars. The instruction, therefore, was erroneously favorable to appellant in permitting the jury to exonerate it if it had failed to place grab-irons on its tender, but had offered a substitute in the form of a pin-lifting or uncoupling rod. That the act did not contemplate such a substitution is clear from its terms. It has been so held by one Federal court. [United States v. Railway, 184 Fed. 94; United States v. Railway, 184 Fed. 99.] Either automatic couplers, with their uncoupling levers, were in use and upon cars when the applicable Safety Appliance Act was passed or they were not. If they were not in use, it is impossible that Congress had them in mind in requiring grab-irons in the end of cars. If they were in use, then the act clearly contemplated grab-irons in addition to them in order to afford employees "greater security" than was then afforded by whatever appliances were upon the cars. It is true there are decisions which construe the act otherwise, but the cases cited are in better accord with

its language and the circumstances attending its passage.

Further, even if railroads may satisfy the act by using substitutes for grab-irons, it is not possible to believe the modification could have the meaning attributed to it by appellant.

Taken as a whole, as it must be, the instruction authorized the jury to exonerate defendant, so far as concerned the absence of grab-irons from the tender, if they found the pin-lifting rod was so constructed that it would easily be grasped and furnished employees security reasonable when compared with that which would have been afforded by the grab-irons had they been fixed in the end of the tender as the terms of the act required. The instruction told the jury that "any iron rod or iron device securely fastened upon the end of defendant's tender to which employees could conveniently catch hold . . . was a handhold or grab-iron within the meaning of the law." That the jury could have construed the clause added by the court so to modify this explicit declaration as to require them, before finding for defendant, to find that the substituted device afforded employees, in coupling and uncoupling cars, reasonable security or any degree of security from danger not incident to such work, is inconceivable unless we are to assume the jury's intelligence was of a very low order. That assumption will not be made. The instruction was not misleading and contained no error against appellant.

IX. It is insisted the verdict is excessive. At the time he was injured, June 9, 1910, respondent was twenty-two years old, and was earning from $75 to $100 per month. Prior to that time his health had been excellent. As a result of his injuries he has lost both hands and one of his legs was broken and so injured that it

Excessive
Verdict.

is two and one-half inches shorter than the other and its use much impaired otherwise. He suffered greatly as the immediate result of his injuries and still suffers therefrom. He is practically helpless, being unable even to feed himself. He is able to walk but little, and that little is difficult and painful. His expectancy at the time he was injured was about forty years. His earning power is practically destroyed. He testified there was nothing he could do to earn anything and little effort was made to combat that testimony. ' In the very morning of life 'he is suddenly rendered helpless and subjected to tortures of both body and mind which are hardly to be described. [Scullin v. Railroad, 184 Mo. 1. c. 709; Markey v. Railroad, 185 Mo. 1. c. 364 et seq.; Hill v. Union E. L. & P. Co., 260 Mo. 1. c. 43; Lessenden v. Railway, 238 Mo. 1. c. 266, 267; Yost v. Railroad, 245 Mo. 1. c. 252, 253.] The affirmance of judgments for $20,000 for the loss of both legs is not unusual in this court. Such an infliction leaves many occupations open to the victim. The loss of both hands more seriously diminishes earning power, nearly or practically destroying it, and entails much greater expense in the matter of personal attendance necessitated by the helplessness resulting from such an injury. The judgment is not excessive.

X. Other errors are assigned but a careful examination of them all in the light of what has been said discloses no prejudice to appellant's rights. The case was well tried, and the verdict is in just accord with the grievousness of the injuries inflicted. The judgment is affirmed. All concur, except *Woodson, J.,* not sitting.