# ERNEST JORDAN v. EAST ST. LOUIS CONNECT-
## ING RAILWAY COMPANY, Appellant.

### Division One, April 13, 1925.

1. **RAILROAD:** Safety Appliance: Out-of-Line Drawbar: Straight Track. The knuckle of a railroad car on a straight track being open and it being conceded that some lateral play must be allowed to drawbars, the failure of its coupler to automatically couple indicates that the company had failed to comply with the U. S. Safety Appliance Act, and, in the absence of an explanation believed by the jury, authorizes the overruling of a demurrer to plaintiff's case whose foot was injured when, in the performance of his duties as a switchman, he attempted to force the drawbar into line by kicking it.

2. ———: ———: ———: Instruction: Failure to Automatically Couple. Where the switchman, in the performance of his duties relating to the coupling of railroad cars on a straight track, noticed that the knuckle of a certain car was closed and the drawbar six inches out of line, and went between the car and another nearer the engine, and opened the knuckle, and then attempted to push the drawbar into line with his hands and, being unable to do so, braced himself with his hands against the corner of the car and tried to kick or push the drawbar into line with his foot, and the car nearer the engine came on and crushed his foot, an instruction telling the jury that if they find from the evidence that the cars "were not equipped with couplers coupling automatically, by impact, without the necessity of plaintiff going between the ends of the cars, and by reason of this, or if this in whole or in part caused plaintiff to be injured," their verdict must be for him, does not ignore the pleaded defense that the lateral play of the drawbar was not excessive, and is not error where the case is based on a violation of the Safety Appliance Act, coupled with the provisions of the Federal Employers' Liability Act.

3. ———: ———: ———: ———: Excessive Play of Drawbar. In an action by a switchman based upon a failure to equip railroad cars with automatic couplers in the manner required by the U. S. Safety Appliance Act, an instruction asked by defendant telling the jury that "the failure to equip cars with drawbars that could be lined up for coupling without plaintiff going between the cars does not in itself constitute a violation of the law, but the sole question for you to decide is whether the amount of lateral play of the drawbar in question was excessive" is properly refused, where

the evidence is that the track was straight, that the drawbar was six inches out of line and that the lateral play of cars at curves is from four to six inches. Such evidence does not demand that every contingency be excluded except the single one that the lack of correct alignment was due to excessive lateral play.

4. ———: ———: **Violation of Rules.** A violation of a rule of defendant forbidding employees to kick drawbars is at most contributory negligence, and contributory negligence constitutes neither a defense nor mitigation in a case founded on a violation of the U. S. Safety Appliance Act requiring railroad cars to be equipped with automatic couplers, and consequently it is not error to refuse to permit defendant to offer such rule as evidence.

5. **EXCESSIVE VERDICT:** Ten Thousand Dollars: Injury to Foot. Plaintiff was thirty-four years of age, and had been employed chiefly as a switchman for fourteen years. With his right foot he kicked the drawbar which was out of line and the on-coming car crushed his foot. At the time he had been earning two hundred dollars per month. After the injury he was confined to a hospital for six months, and at the time of the trial, eleven months after the injury, he had not been able to earn anything, and could walk no considerable distance without the aid of crutches. There was a compound fracture of the first and second metacarpal bones of the foot; some bones came out; a sore place on the top of the foot indicated a diseased bone at the time of the trial; he is permanently disabled from following his former calling. *Held,* that a verdict for ten thousand dollars is not excessive.

Citations to Headnotes: Headnote 1: Master and Servant, 39 C. J. sec. 1331. Headnote 2: Master and Servant, 39 C. J. secs. 1403, 1414. Headnote 3: Master and Servant, 39 C. J. secs. 1402, 1414. Headnote 4; Master and Servant, 39 C. J. secs. 1032, 1105, 1243. Headnote 5: Damages, 17 C. J. sec. 445.

Appeal from St. Louis City Circuit Court.—*Hon. Charles W. Rutledge,* Judge.

AFFIRMED.

*J. L. Howell* and *R. E. Blodgett* for appellant.

(1) The demurrer to the evidence should have been sustained. C. M. & St. P. Railroad v. United States, 196

Fed. 882; C. M. & St. P. Railroad v. Voelker, 129 Fed. 526; Davis v. Hand, 290 Fed. 73; Smith v. Public Service Corporation of New Jersey, 75 Atl. 937; Pittsburgh, C. C. & St. L. Railroad v. Cozatt, 79 N. E. 534; Lindvall v. Woods, 44 Fed. 857; Cooley on Torts (2 Ed.) p. 73; Glenn v. Metropolitan Street Ry Co., 167 Mo. App. 109. (2)  The court erred in giving and reading to the jury Instruction 1 requested by the plaintiff.  Atlantic City Railroad Co. v. Parker, 242 U. S. 59; Chesapeake & O. Railroad Co. v. Arrington, 101 S. E. 415.  (3)  The court erred in refusing to give and read to the jury defendant's instruction numbered 4.  Atlantic City Railroad Co. v. Parker, 242 U. S. 59; San Antonio & A. P. Railroad Co. v. Wagner, 241 U. S. 476, 60 L. Ed. 1110; Crowe v. B. & M. Railroad Co., 136 N. E. 189.  (4)  The court erred in refusing to permit defendant to show that a rule had been promulgated forbidding employees to kick drawbars and to show that the plaintiff had knowledge of the existence of this rule.  Schendel v. C. M. & St. P. Railroad, 197 N. W. 744; Kern v. Payne, 211 Pac. 767.

*Sidney Thorne Able* and *Charles P. Noell* for respondent.

(1)  Proof that a switchman of several years' experience while attempting to couple two cars together found that, by using the lever or pin lifter on the outside of the car, he could not throw the knuckle of the drawbar open preliminary to coupling the car to the car opposite it, and proof that the two cars undertaken to be coupled were standing on a straight track and that the drawbar on one of the cars by reason of lateral play was out of line so that it would not couple automatically by impact without the necessity of the plaintiff going between the cars, opening the knuckle with his hands and pushing or kicking the drawbar into alignment, and proof that plaintiff was injured while adjusting the coupler in between the cars, is sufficient proof to entitle the jury to find that the couplers were not in the condition required by the Safety Appliance Act.  Grand Trunk W. Railroad Co. v. Lindsay, 233 U. S. 42, 58 L.

Ed. 842; San Antonio & A. P. Ry. Co. v. Wagner, 241 U. S. 476; Hogenleitner v. Southern Pac. Co., 177 Fed. 796; Chicago, Rock Island & Pac. Railroad Co. v. Ray, 168 Pac. (Okla.) 999; Noell v. Quincy O. & K. C. Railroad Co., 182 S. W. 787; Atlantic City Railroad Co. v. Parker, 242 U. S. 56, affirming 87 N. J. L. 148; Payne v. Colvin, 276 Fed. 15; Philadelphia & R. Ry. v. Eisenhart, 280 Fed. 271; Chicago, Rock Island & Pacific Ry. Co. v. Brown, 57 L. Ed. 1204; Smith v. Atlantic Coast Line, 210 Fed. 761; Texas & N. O. Ry. Co. v. Conway, 98 S. W. 1070; Daly v. Ill. Cent. Ry. Co., 170 Ill. App. 185; Johnson v. Southern Pac. Co., 196 U. S. 1, 49 L. Ed. 363; Chicago M. & St. P. Railroad Co. v. Voelker, 129 Fed. 522; Johnson v. Great Northern, 178 Fed. 643; Philadelphia & R. Railroad Co. v. McKibbin, 259 Fed. 476; Nashville C. & St. L. Ry. Co. v. Henry, 164 S. W. 312, 158 Ky. 88; Donagan v. B. & N. Y. Railway Co., 165 Fed. 869; Erie Railroad Co. v. Russel, 183 Fed. 722; Tennessee & G. R. Railroad Co. v. Drake, 276 Fed. 394; Willet v. Illinois Central Railroad Co., 142 N. W. 828, 122 Minn. 513. (2) The preparation of the coupler and the impact itself, it has been held, are not isolated acts but are connected and indivisible parts of the coupling operation within the purview of the Safety Appliance Act. Chicago M. & St. P. Railroad Co. v. Voelker, 129 Fed. 522; Johnson v. Southern Pac. Co., 196 U. S. 1, 49 L. Ed. 363; Grand Trunk Western Railroad Co. v. Poole, 175 Ind. 567; Burho v. Minneapolis & St. L. Ry. Co., 121 Minn. 326; San Antonio & A. P. Ry Co. v. Wagner, 166 S. W. 24, 241 U. S. 476; Southern Railroad Co. v. Simmons, 105 Va. 651, 55 S. E. 459. (3) The court did not err in giving and reading to the jury plaintiff's Instruction 1, as it was based upon and followed the law. San Antonio & A. P. Ry. Co. v. Wagner, 241 U. S. 476; Grand Trunk W. R. Co. v. Lindsay, 233 U. S. 42, 58 L. Ed. 842; Authorities cited in preceding paragraphs. (4) The court did not err in refusing to give and read to the jury defendant's Instruction 4, for the following reasons: (a) Because the instruction was in conflict with plaintiff's Instruction 1. (b) Because defend-

Jordan v. East St. Louis Connecting Ry. Co.

ant's offered instruction permitted the jury to find for defendant, even though the couplers would not couple automatically by impact without the necessity of plaintiff going between the cars. This offered instruction should have submitted to the jury the question of whether or not the defendant's cars would couple automatically by impact without the necessity of plaintiff going between the ends of the cars. (c) Because the evidence shows that the plaintiff tried to open the knuckle of the coupler by means of the lever or pin lifter from the outside of the car, and after several attempts finally had to go between the cars to open the knuckle of the coupler with his hands, and while he was between the cars adjusting the coupler he noticed that the drawbar was also out of line and would not couple automatically by impact, and with this evidence defendant's instruction should have permitted the jury to find for plaintiff, if they found that the plaintiff went between the ends of the cars to open the knuckle with his hands after having failed to open same by the pin lifter on the outside, and it should have authorized the jury to find for plaintiff if the coupler was also out of line, necessitating plaintiff going between the cars to adjust it. (d) Because all the evidence in this case shows that the track was straight at the place where the coupling was to be made by the plaintiff, and defendant is required under the Safety Appliance Act and the decisions thereon to keep its cars equipped with couplers which will couple and uncouple automatically even on curves. San Antonio & A. P. Ry. Co. v. Wagner, 241 U. S. 476; Chicago, Rock Island & Pac. Railroad Co. v. Ray, 168 Pac. (Okla.) 999; Hogenleitner v. Southern Pac. Co. 177 Fed. 796; Philadelphia & R. Railroad Co. v. McKibbin, 259 Fed. 476; Nashville C. & St. L. Ry. Co. v. Henry, 164 S. W. 312, 158 Ky. 88; Donagan v. B. & N. Y. Railway Co., 165 Fed. 869; Erie Railroad Co. v. Russel, 183 Fed. 722; Tennessee & G. R. Railroad Co. v. Drake, 276 Fed. 394; Willet v. Illinois Central Railroad Co., 142 N. W. 828, 122 Minn. 513.

LINDSAY, C.—This is a suit for damages for personal injuries wherein the plaintiff had a verdict and judgment in his favor. He was employed as a switchman by the defendant, and as such was engaged in the attempt to make a coupling of certain freight cars in defendant's yards. It was conceded that plaintiff and defendant were at the time engaged in interstate commerce, and the case is one falling within the Federal Employers' Liability Act. Beyond that, the action is grounded upon an alleged violation by defendant of the Federal Safety Appliance Act (27 Stat. L. 531; 32 Stat. L. 943).

The petition charged "that by reason of the failure of the defendant to have said cars equipped with couplers coupling automatically by impact without the necessity of men going between the ends of the cars, it was necessary for the plaintiff in order to effect a coupling between the said cars to go between the ends of such cars, and plaintiff did go between the ends of said cars and did attempt to adjust the said couplers and drawbars while between the ends of such cars so that they would couple, and that while he was between the ends of the said cars about such work, by reason of the failure of the defendant to comply with the Federal Safety Appliance Act in the particulars mentioned his right foot was caught and crushed." The petition did not charge negligence in the time or manner of movement of the car.

The answer was a general denial, a plea of assumption of risk, and a plea "that whatever injuries the plaintiff may have sustained if any, were the result of his own carelessness and negligence in this, that he used his foot in attempting to line a drawbar of a car while another was in motion toward said car for the purpose of being coupled thereto."

The reply was a general denial.

The plaintiff's statement was that he found the coupler of a car which was to be coupled to the next in the line of cars being backed toward it, was not open, and it did not open when he undertook to open it by operating the lever on the outside of the car. On that ac-

Jordan v. East St. Louis Connecting Ry. Co.

count, he found it necessary to open the knuckle with his hand, and did so. At the same time, he had noticed that the drawbar was out of line to such an extent that the coupling apparatus at its outer end would not make proper contact with the coupler of the other car, when they came together, so as to make the coupling automatically. It is manifest, and it was conceded, that the drawbar, in its manner of attachment to the car, must have a certain liberty of lateral motion, so that it may accommodate itself to curves in the track. The plaintiff said that the drawbar was about six inches out of line. It was admitted that there was no device by which, from the outside of the car, the drawbar could be moved into alignment and that if the drawbar was out of line and required adjustment, a man would have to go between the cars to line it up. It appears that plaintiff first tried to shove the drawbar into line with his hand. Failing in that, he placed his hands, one against the corner, the other against the end of the car, to brace himself, and undertook to push the drawbar back with his foot, and he was injured while so engaged.

The errors assigned here are (1) refusal of the court to sustain defendant's demurrer, offered at the close of plaintiff's case and at the close of the whole case; (2) the giving of instruction numbered 1 for plaintiff; (3) refusal to give defendant's instruction numbered 4; (4) exclusion of testimony offered by defendant regarding a rule against "kicking drawbars", and (5) excessiveness of the verdict. The first raises the question of the right of plaintiff to recover at all, under the law and the facts; and this is to be considered upon the evidence favorable to the plaintiff and all inferences to be reasonably drawn therefrom.

I. There is no testimony as to the manner of the occurrence except that of plaintiff himself. No other person was an eyewitness of what he did.

**Demurrer to Case.** There were about thirty cars on a track extending north and south, and several couplings were to be made. The engine was at the north end of the line.

The plaintiff went southward on the east side of the
cars, observing where a coupling was necessary, whether
the knuckles of couplers were open, opening them when
necessary, and giving signals to the engineer as occasion
required. The twenty-seventh car in the line, as he went
southward, had been coupled on. The twenty-eighth car
stood a car-length or more distant from the south end of
the twenty-seventh car, after the latter had been coupled,
and at the time plaintiff approached it. As he did so,
he noticed that the knuckle of the coupler of the twenty-
eighth car was closed, and that the drawbar was about
six inches out of line—toward the east. He made sev-
eral efforts to open the knuckle by using the lever, and
it failing to open, he went in and opened the knuckle with
his hands. He then undertook to push the drawbar back
into line with his hands, and being unable to do so,
braced himself with his hands against the car, and tried
to push or kick the drawbar back with his right foot.
The other car came on, and his foot was crushed. The
impact did not cause a coupling. According to his testi-
mony the track where the two cars stood was straight.
The defendant's argument upon the demurrer proceeds
upon the theory that the operation of opening the
knuckle had been accomplished in safety; that since it
was open at the time plaintiff undertook to align the
drawbar, the failure of the knuckle to open by use of the
lever was not the proximate cause of his injury; that
the immediate, independent and intervening cause of his
injury was his act of kicking the drawbar; that the mere
fact the drawbar was out of line—the cars standing as
they were—constituted no violation of the Safety Ap-
pliance Act, and that there is nothing upon which to base
a claim of liability except the mere fact that the draw-
bar was out of line.

In Atlantic City Railroad Company v. Parker, 242
U. S. l. c. 59, it was said: "Some lateral play must be al-
lowed to drawheads, and further, the car was on a curve,
which of course would tend to throw the coupler out of
line. But the jury were warranted in finding that the

curve was so slight as not as affect the case and in regarding the track as for this purpose a straight line. If couplers failed to couple automatically upon a straight track; it at least may be said that a jury would be warranted in finding that a lateral play so great as to prevent coupling was not needed, and that, in the absence of any explanation believed by them, the failure indicated that the railroad company had not fully complied with the law.'' [Citing cases].

In the instant case the plaintiff as a switchman of fourteen years' experience testified that the usual play of drawbars, to either side of the center, was about four inches. He testified that there were no sharp curves close to where these cars were. The defendant introduced a witness who testified that the amount of lateral play necessary in rounding curves depends on the length of the car; that greater lateral play was needed for a longer car; that the lateral play for a car thirty-six feet long was from four to six inches; that there was an additional play of two inches required for each additional five feet of length of the car. The defendant introduced evidence that a car thirty-six feet long was a small car, but did not show the length of the car in question. The same witness for defendant testified that it was not necessary for the drawbar in each car to be on a direct line with the other in order to couple; that if both knuckles are open there can be a variation of four to six inches on the side; that if only one knuckle is open it depends on how much the other drawbar is worn; that if a new drawbar and a new knuckle and only one knuckle open, then it would have to be in line one inch or one and a half inches, and if a little worn then an inch and a half to three inches. There is no testimony concerning whether these drawbars and knuckles were worn. Under the evidence it is sometimes necessary to go between the ends of cars and line up the drawbars in order to effect a coupling. Such an act is not independent of or unrelated to the act of opening the knuckle whether the opening be done with the lever or by hand. Both may be necessary to accomplish the ultimate thing to be done.

Under the evidence in the record it was for the jury to find whether the lateral play of the drawbar in question was greater than was needed, and such as to prevent a coupling by impact, and required adjustment. "The preparation of the coupler and the impact are not isolated acts, but connected and indispensable parts of the larger act, which is regulated by these statutes, and the performance of which is intended to be relieved of unnecessary risk and danger." [Chicago M. & St. P. Ry. Co. v. Voelker, 129 Fed. l. c. 527.]

We have read the cases cited by defendant upon this assignment. Among them are C. M. & St. P. Ry. Co. v. United States, 196 Fed. 882; Davis v. Hand, 290 Fed. 73; Smith v. Public Service Corporation, 75 Atl. 937; Pittsburgh & C. R. R. Co. v. Cozatt, 79 N. E. 534; Glenn v. Met. St. Ry. Co., 167 Mo. App. 109. Some of them discuss the question of what constituted proximate cause in the given case, but not upon facts similar to those in this record. We hold that there was no error committed in overruling the demurrer.

II. The next objection goes to instruction numbered one for plaintiff, and is directed against the latter part of the instruction. This instruction,

**Automatic Coupler.** after stating the requirements and purpose of the Safety Appliance Act and the effect of the provision of the Employers' Liability Act concerning contributory negligence, continues as follows: "and the court further instructs you that if you find and believe from the evidence that on the 22d day of April, 1921, at the time mentioned in the evidence, the cars mentioned in the evidence were not equipped with couplers coupling automatically, by impact, without the necessity of the plaintiff going between the ends of the cars, and by reason of this, or if this in whole or in part caused the plaintiff to be injured, your verdict should be for the plaintiff."

Chiefly in support of the objection to this instruction it is urged by counsel for defendant that the theory

upon which the case was tried, was whether the lateral play of the drawbar was excessive, or not, and that plaintiff's injury resulted therefrom; that the instruction ignores this issue, and permits plaintiff to recover if they believe merely that the knuckle did not open by means of the lever, and it was necessary for plaintiff to go between the ends of the cars to open it, which, they say, was an act completely accomplished. That was the theory of the defendant. The instruction is not as definite as might be, but it cannot be said that it ignores the issue whether the lateral play of the drawbar was excessive or not. It does not single out that issue. It submitted the question whether the cars were equipped to make the coupling automatically by impact so as to obviate the necessity of plaintiff going between the ends of the cars. It was broad enough to include finding of a necessity arising from the misalignment of the drawbar, but it was not restricted to that solely, as the only cause.

The purpose and effect of the Safety Appliance Act are discussed in Johnson v. Southern Pacific Ry. Co., 196 U. S. 18; St. Louis I. M. & S. Ry. v. Taylor, 210 U. S. 281; St. Louis & S. F. Railroad Co. v. Conarty, 238 U. S. 243 and other cases. In effect the holding has been that the purpose was to substitute for the qualified common-law duty an absolute duty to maintain at all times an equipment which would obviate the necessity of men going between the ends of cars in coupling or uncoupling them.

In the case of San Antonio & A. P. Ry. Co. v. Wagner, 241 U. S. 476, there was involved the fact that the drawhead of an engine was out of line at the time of the impact and of the plaintiff's injury. The issue made by the pleadings was substantially the issue made here. The answer of the defendant pleaded that the couplers of engines, tenders and cars "must have sufficient lateral motion to permit trains to run around curves," and it was further pleaded that "there is no kind of automatic coupler constructed · or that can be constructed which will couple automatically at all times without previous

adjustment because of the lateral play necessary to enable coupled cars to round curves." The manner of the occurrence is set forth, at page 479: "At the trial the evidence tended to show that plaintiff was engaged in switching at one of defendant's yards and was riding upon the footboard at the rear of the engine in order to make a coupling between it and a box car; that at the first impact—to use plaintiff's words—'the coupling wouldn't make; I coupled up against them but it wouldn't make.' He then signaled the engineer to draw ahead, and this having been done, he adjusted the knuckle and pin upon the box car, and 'I gave the engineer a back-up signal to couple in again and I got back on the footboard of the engine; when I got on the footboard I looked down and I seen the drawhead on the engine was shifted away over to my side and I reached up with my left foot to shift the drawhead over so it would couple and my right foot slipped on the wet footboard;' as a result of which his left foot was caught between the drawheads and crushed. He testified that at the first impact the drawhead on the engine was in line with that on the box car and that the only thing that prevented the coupling at this time was the failure of the pin on the box car to drop."

The character of the instructions for the plaintiff is also shown at page 480: "The trial court instructed the jury that if the locomotive and car in question were not equipped with couplers coupling automatically by impact without the necessity of plaintiff going between the ends of the cars and by reason of this and as a proximate result of it plaintiff received his injuries the verdict should be in his favor."

The conclusions of the court pertinent here were stated at page 483: "It is insisted that neither the original act nor the amendment precludes adjustment of the coupler prior to or at the time of impact, or treats a drawbar out of alignment as a defect in the automatic coupler, or as evidence that the cars are not equipped with couplers measuring up to the statutory standard. The evidence of bad repair in the automatic equipment

was not confined to the fact that the drawbar on the engine was out of line; the fact that the coupling-pin on the box car failed to drop as it should have done at the first impact, and required manipulation in preparation for the second impact, together with the fact that the drawbar on the engine was so far out of line as to require adjustment in preparation for the second impact; and the opinion evidence, being sufficient to sustain a finding that the equipment was defective, the jury could reasonably find that the misalignment of the drawbar was greater than required to permit the rounding of curves, or, if not, that an adjusting lever should have been provided upon the engine as upon the car, and that there was none upon the engine. We need not in this case determine, what was conceded in Chicago, R. I. & P. R. Co. v. Brown, 229 U. S. 317, 320, 57 L. Ed. 1204, 1205, 3 N. C. C. A. 826, that the failure of a coupler to work at any time sustains a charge that the act has been violated.''

That case and Atlantic City Ry. Co., 242 U. S. 56, referred to in the preceding paragraph, were mentioned in an explanatory way in Pennsylvania Railroad Co. v. Jones, 300 Fed. (C. C. A.). It was said at page 527: ''In Atlantic Co. v. Parker, 242 U. S. 56, the only holding is that the jury may infer a statutory defect if there is evidence that the required automatic coupling did not occur because there was too much lateral play in the drawheads, and the fact that some lateral play is necessary in order to permit coupling on a curve did not necessarily show that there was not an unnecessary amount in these drawheads. These cases are closest in point but they fall short of any definite holding.''

The plaintiff's instruction numbered 1 presented the issue of a failure to have an equipment which would couple automatically, by impact, without the necessity of plaintiff going between the ends of the cars. We do not think the giving of it constituted reversible error because it did not restrict the finding of a defect, solely, to a defect due to an excessive lateral play of the drawbar.

III.   The next assignment is directed to the refusal of the court to give for defendant its offered instruction numbered 4, which is as follows:

"The court instructs you that the failure to have the car in question equipped with a drawbar that could be lined for coupling without plaintiff going between the cars does not in itself constitute a violation of the law requiring cars to be so equipped as to couple without the necessity of his going between said car and the one to which it was to be coupled, but the sole question for you to decide in determining the liability of defendant for plaintiff's injury is whether the amount of lateral play of the drawbar in question was excessive and constituted a violation of said law for that reason, and in this connection you are instructed that some lateral play to the drawbar must be allowed and sufficient play to enable the car to go around curves such as you find and believe reasonably and ordinarily existed on railroad lines and in switch yards at and before the time of plaintiff's injury, and though you find and believe that the drawbar of the car in question was out of line when plaintiff attempted to push it over with his foot and that he had to go between the ends of the cars to do so and that he was injured as a result, nevertheless you can only find for the plaintiff if you find and believe from the evidence that the lateral play of the drawbar in question was excessive beyond the need above described as permissible and that plaintiff was injured solely by reason of such excessive lateral play of the drawbar and would not have been injured except for such reason."

*Excessive Play of Drawbar.*

In support of their contention under this head, counsel have cited Atlantic Ry. Co. v. Parker, 242 U. S. 59, and San Antonio & A. P. Ry. Co. v. Wagner, 241 U. S. 476, to which reference has already been made. They further cite Chesapeake & O. Ry. Co. v. Arrington, 101 S. E. (Va.) 415, and Crowe v. Boston & M. Ry. Co., 136 N. E. (Mass.) 189. In Chesapeake & O. Ry. Co. v. Arrington, the side-play of the drawbar of an engine

was involved, and evidence was introduced as to the necessity for side-play, and as to what was the standard in accepted use. In that case the defendant offered the following instruction:

"The court instructs the jury that side-play in a coupler according to a standard in general and accepted use on railroads does not constitute a defect in a coupler, unless the jury further believe from the evidence that in one or both of the couplers involved in this case there was greater side-play, or that the coupler or couplers were more out of line, than was necessary for the safe operation of the engine and cars."

"The Virginia Court of Appeals held the refusal of the instruction was error, but, in doing so, criticized the language used, and gave its own interpretation of what was intended. It was said, 101 S. E. l. c. 421: "The language is not aptly chosen, it is true, and instead of saying that it did not constitute a defect unless there was greater side-play, or that the coupler or couplers were more out of line than was necessary for the safe operation of the engine and car, it would have been more appropriate to say 'than was necessary to bring about, when properly operated and given a fair trial, the automatic coupling of the car and engine by impact without the necessity of the plaintiff's going in between the ends of the engine and car to effect the coupling.' ""

That instruction is materially different from the one here, and especially so as interpreted by that court. Here, the side-play defined is "sufficient play to enable the car to go around curves such as you find and believe reasonably and ordinarily existed on railroad lines and in switch yards." There, the side-play was not more than was necessary to bring about automatic coupling. The instruction here makes allowance for the full or utmost side-play needed for curves. One founds its definition upon what is needed for coupling; the other takes cognizance only of what is needed for curves. The first part of the instruction excluded the existence of any duty to have an equipment by which the drawbar could be lined for coupling without going between the cars, and

it then told the jury that the *sole* question for them to decide in determining liability or non-liability was whether the lateral play was excessive, as tested by what was needed for a car going round curves. In so doing it excluded consideration of any evidence or inference therefrom, that there was about these cars any appliance defective in itself, or, a defective functioning at the time, of any part of the coupling equipment other than misalignment of this drawbar.

The evidence has been stated, but may be referred to again. The only evidence as to how far the drawbar was out of line was that of plaintiff himself, that it was out about six inches. Counsel for defendant in their argument here call attention to the evidence "that if both knuckles on the couplers were open, a drawbar out of line six inches would still couple automatically;" and "recall that both knuckles were open before the coupling was to take place, inasmuch as plaintiff had already opened the one of the twenty-eighth car with his hand." This is considered with defendant's evidence that the normal play necessary for rounding curves was from four to six inches, for a car thirty-six feet long; and that the length of this car is not given. According to this evidence the actual play of the drawbar might not have exceeded the normal for curves, nor exceeded that which would prevent an automatic coupling with both couplers open, if they responded properly to the impact, yet, the evidence is that the cars did not couple by the impact, and the evidence is that the knuckle of the one, while open by the use of plaintiff's hands, had failed to open by pulling the lever. We do not construe this evidence as demanding that every contingency be excluded except the one that the failure was due to excessive lateral play. We do not think the jury should have been told that this was the sole question to be decided.

IV. The next error assigned is the refusal of the court to permit defendant to show that a rule had been promulgated forbidding employees to kick drawbars, and to show that the plaintiff had

**Violation of Rule.**

knowledge of the existence of that rule. Upon that, Schendel v. C. M. & St. P. Railroad Co., 197 N. W. (Minn.) 744, and Kern v. Payne, 211 Pac. 767, are cited. But it was held otherwise in Moore v. St. Joseph & G. I. Ry. Co., 268 Mo. 31. In that case, one under the Safety Appliance Act, the question came up upon a rule forbidding employees "to go between cars in motion to uncouple them." Following reference to the circumstances under which the question arose, the court said at page 35: "Further, respondent's violation, if any, of appellant's, rule was at most but evidence of contributory negligence; and in this case, the action being founded upon violations of the applicable Safety Appliance Act, contributory negligence constitutes neither defense nor mitigation. [Second Employers' Liability Cases, 223 U. S. 1. c. 49, 50.] There was no error in this ruling." In the first case cited by defendant, Schendel v. Chicago M. & St. P. Ry. Co., the question at issue was one of "exact obedience from an employee to a foreman's direct command, requiring instant execution." It was held that if the employee directly contrary to such command meddled with a defective appliance his wilful disobedience must be regarded as the sole cause of his injury. But the court distinguished between a command of that sort, and the issuance of general standing orders or rules, the rule on the latter being that of the Supreme Court of the United States stated in Great Northern Ry. v. Otos, 239 U. S. 349. This assignment must be ruled against defendant.

V. It is contended that the verdict was excessive. The plaintiff had a verdict for $14,000, of which the plaintiff remitted $4,000 by order of the court, and judgment for $10,000 was allowed. The plaintiff was thirty-four years old, and had been employed chiefly as a switchman for about fourteen years. He was earning at the time he was injured about $200 per month. He was in the hospital for about six months after his injury. At the time of the trial, about eleven months after he was injured, he had not been

**Excessive Verdict.**

able to earn anything, and could walk no considerable distance except upon crutches. There was compound fracture of the first and second metacarpal bones of the right foot. Some of the bones came out. There was testimony that at the time of the trial he had a sore place on the top of his foot showing evidence of some diseased bone of the arch. There was a difference of opinion as to whether an arch support, or any shoe could be made that would enable him to walk to any considerable extent, using that foot. It is very clear that the plaintiff is permanently disabled from following his former calling. In consideration of the opportunity had by the trial court and the jury, and of what has been held in somewhat similar cases on appeal (Brickey v. St. Louis M. B. T. Ry. Co., 259 S. W. 480; Ernst v. Union Depot B. & T. Co., 256 S. W. 222) we are of the opinion that upon this point also the action of the trial court should be sustained.

It follows that the judgment should be affirmed. *Seddon, C.,* concurs.

PER CURIAM:—The foregoing opinion of LINDSAY, C., is adopted as the opinion of the court. All of the judges concurs, except *Atwood, J.,* not sitting.