# OCTOBER, 1925.

C. F. HAACK, RESPONDENT, v. LIZZIE HAMMER, GUARDIAN, APPELLANT.*

Kansas City Court of Appeals. November 9, 1925.

*Corpus Juris-Cyc References: Appeal and Error, 4CJ, p. 853, n. 59; Bills and Notes, 8CJ, p. 1020, n. 7; p. 1072, n. 84; Witnesses, 40Cyc, p. 2492, n. 25.

*E. C. Lockwood* for appellant.

*George P. Adams* for respondent.

ARNOLD, J.—This is an action against one of the makers to collect a promissory note, given in payment for the purchase of a second-hand automobile truck. The note, upon which the action is based, is dated July 18, 1921, and recites that "six months after date, I, we, or either of us, as principal, promise to pay C. F. Haack, or order, $300." The note was to draw interest at eight per cent payable annually and if not so paid to become a part of the principal and bear interest at the same rate. It is further provided that if the note is not paid at maturity and is placed in the hands of an attorney for collection, or if suit be instituted thereon, the principals agree to pay

ten per cent attorney's fees in addition to court costs and expenses incurred in collecting the same. The note is signed H. C. Sarver, G. W. Sarver and C. E. Hammer.

The note was not paid at maturity. After the execution of the said note, said C. E. Hammer was declared, by the probate court, to be incapable of managing his affairs and his sister, Lizzie Hammer, with whom C. E. Hammer had made his home in common, for many years, was appointed his guardian and placed in charge of his affairs. Said guardian refused payment of the note and a claim was filed against the estate of Charles E. Hammer in the probate court. Said court, after a hearing, refused the claim and an appeal was taken to the circuit court where the cause was tried to a jury, resulting in a verdict for plaintiff in the principal sum of $342 and $34.20 attorney fees, being a total of $376.20. Motions for new trial and in arrest were overruled and defendant appeals.

The appeal is before us on the record and brief of appellant only. The record contains no formal pleadings, none being required in the probate court, and in this situation we must read the entire record, which we have done.

The facts disclosed are that plaintiff owned a second-hand truck described as a "Ford Chassis with a Smith Form A attachment, chain drive." The testimony shows that Charles E. Hammer is past sixty years of age and the owner of considerable land and personal property; that G. W. Sarver, another signer, was a tenant on some land owned by Hammer at the time of the execution of the note and for sometime previous; that H. C. Sarver, a son of G. W. Sarver, was about seventeen years old at the time of signing the note; that plaintiff sold the truck to H. C. Sarver.

Before the sale, as aforesaid, it appears there had been some discussion between plaintiff and H. C. Sarver as to how the price should be met. H. C. Sarver testified that he asked plaintiff if Charles E. Hammer would be satisfactory on a note in payment for the car. Plaintiff testified he made some inquiries of persons acquainted with the financial standing of Hammer and being satisfied, told Sarver that he would accept a note for the purchase price of the truck, if signed by Hammer. It is in evidence that in June, 1921, prior to the execution of the note in July, Hammer made an improvident investment in some Texas oil lands for which he turned over to the sellers thereof some $1700 in bank stock and gave his note for $3600. However, through the intervention of relatives of Hammer and the efforts of counsel, the bank stock was never transferred but was returned. The $3600 note is said to have been lost.

Soon after this occurrence, certain relatives of Hammer undertook to have him declared incompetent in the probate court of Gen-

382

try county, but because of the absence of the judge of said court, no final action was taken upon such application until February 11, 1922, when, on inquisition, the judge of said court declared Hammer incompetent to manage his own affiairs, and, as stated, a guardian was appointed for him. Both in the probate court and in the circuit court payment of the note in question by the guardian of Hammer was resisted upon the grounds: (1) that the signature of C. E. Hammer to the note is a forgery; (2) that if said signature is not a forgery it was procured by fraud and imposition; (3) that at the time of the purported execution of said note, Hammer was weak of intellect, easily influenced and incapable of realizing the obligation incurred in signing the note, and that plaintiff had knowledge of such mental condition at the time the note was executed; (4) conspiracy between plaintiff and H. C. Sarver to defraud said Hammer in securing his signature to the note; and (5) inadequacy of consideration.

Appellant charges the verdict was so contrary to the overwhelming weight of the credible evidence that it should work a reversal of the judgment. In this respect, it is necessary to note only that there was substantial evidence that C. E. Hammer had agreed to sign the note, previous to the signing thereof, and that he did sign it. There was also evidence in behalf of plaintiff by parties who testified that they knew C. E. Hammer's signature and that his signature on the note was genuine. It must be seen, under these circumstances, that it was the sole province of the jury to say whether there was a forgery of his signature. The jury determined this question against defendant's contention and we are not authorized to disturb their finding in this respect. This is the accepted rule in our jurisdiction. This court held in Brooks v. Terminal Co., 258 S. W. 724, 727: "The rule is not questioned that if there is any substantial evidence to support the verdict and judgment this court is not permitted to disturb the finding of the jury." [Moore v. Railway, 268 Mo. 31, 186 S. W. 1035; Reynolds v. Hanson, 191 S. W. 1030.]

It has been held that although a trial court is authorized by statute to set aside a verdict once because against the weight of the evidence, such authority is not given to an appellate court. [Neeley v. Snyder, 193 S. W. 610.] The evidence and the weight of the evidence are solely matters for the consideration and determination of the jury. [Blass v. Life Ins. Co., 202 S. W. 270.] We therefore rule this point against defendant.

The same ruling applies to defendant's point that there was a conspiracy in the procurement of Hammer's signature to the note. The testimony applicable to the question of forgery is also applicable to that of conspiracy. Of course direct proof of conspiracy is seldom available, due to the nature of the charge, but here there is evidence

to the effect that previous to the signing of the note Hammer had been consulted about it and had agreed to sign it; and, as stated above, there is substantial evidence that he did sign it. It is not claimed by counsel that there is any direct evidence of conspiracy. Rather, counsel urges that from all the circumstances and collateral happenings in the case, this court should conclude that conspiracy was proved. Of course the court cannot do this. The question was solely within the province of the jury, and we cannot disturb their finding in this respect. [See citations above.]

It is charged, generally, that the court erred "in permitting the indiscriminate heckling of defendant's witnesses on cross-examination concerning irrelevant and immaterial matters." This charge is based upon the fact that the court permitted the cross-questioning of Hammer's relatives as to their motive for having him declared incompetent. Counsel insists that the matter of Hammer's insanity had been conclusively adjudicated by the court and therefore the "heckling" of witnesses on that subject was unwarranted and prejudicial.

We may accept the conclusion of counsel in this respect only to the extent that Hammer, in fact, was declared insane, or incompetent, by the probate court; but it cannot be accepted as conclusive in regard to the underlying motive for having him so declared. We are therefore of the opinion on a review of the evidence that the trial court did not err in permitting the cross-examination as recorded.

It is charged the court erred in excluding from the jury testimony to the effect that it was generally known in the community that Hammer was wanting in intelligence sufficient to make a binding contract, and that this was known to plaintiff when the note was executed. The record discloses that this was one of the defenses relied upon to defeat the claim. There is testimony that it was generally known and discussed in the community that Hammer had allowed himself to be led into the improvident investment in the so-called oil land in Texas; and that therefore he was lacking in mental capacity to protect his substance. Counsel offered evidence to show that plaintiff was present and heard this matter discussed prior to the execution of the note. The trial court excluded the testimony upon the grounds that Hammer's incompetence could not be shown by rumor. It is not disputed that Hammer was not declared incompetent in the probate court until after the note in question was executed.

Defendant contends that it was proper to show by general knowledge in the community that Hammer was of unsound mind, and the plaintiff had heard the matter discussed, but tender of testimony on this point was refused by the court. On this point, defendant relies largely upon the case of Stephenson v. Kilpatrick, 166 Mo. 262, 268, where the court said:

"And this court has decided that when a matter is generally known in a community, this is some evidence of notice to those who there reside, or, as it is otherwise expressed, 'where particular knowledge of a fact is sought to be brought home to a party, evidence of the general reputation and belief of the existence of that fact among his neighbors is admissible to the jury as tending to show that he also had knowledge as well as they.' [Brander v. Ferriday, 16 La. Rep. 296.] [To the same effect, see Benoist v. Darby, 12 Mo. loc. cit. 206; Dickerson v. Chrisman, 28 Mo. 134; Conover v. Berdine, 69 Mo. 125; Gordon v. Ritenour, 87 Mo. 54.]"

We fail to see in the Stephenson case any substantial basis for defendant's contention in the case at bar. That opinion discusses the general knowledge of an alleged innocent purchaser of land. In that case litigation had been pending in the county over the land in question for several years, and two suits in relation to it had been dismissed and a decree obtained in a third suit and the person in possession of the land had been evicted, which facts were generally known in the community. The court decided that such general knowledge was admissible as evidence tending to show that the purchaser of the land, after all these events was not a bona-fide purchaser without notice of a contest of title. We cannot hold that the situation in the case at bar in any way parallels the facts in the Stephenson case. In the first place, Hammer's incompetency had not been established at the time the note was executed. A mere rumor that he was mentally incompetent falls far short of establishing such fact, and the testimony as to the talk in the community to this effect clearly was improper.

Plaintiff's instruction No. 1 fully covers this phase of the case and defendant is in no position to complain. The instruction on this point is as follows: "The court instructs the jury that if you believe from a preponderance of the evidence that the defendant, C. E. Hammer, signed the note exhibited in evidence, and that at the time he signed said note, if you believe from the evidence that he did sign it, he had sufficient mental capacity to realize and understand that he was signing the note and that by such act he was binding himself to pay the same, and fully understood the nature of the business he was engaged in, then you will find for the plaintiff," etc.

Defendant's instructions numbered 2 and 3 covered this point upon defendant's theory, as above outlined, but did not correctly declare the law. Their refusal by the trial court was proper.

Finding no reversible error of record, the judgment is affirmed. *Bland, J.,* concurs; *Trimble, P. J.,* absent.